# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

|  |  |
|---|---|
| JOHN DAVID FISCHER, JERALD DUANE FISCHER, and ANGIE LEE FISCHER,<br><br>          Plaintiffs,<br><br>   vs.<br><br>OCWEN LOAN SERVICING, LLC, FEDERAL HOME LOAN MORTGAGE CORPORATION, RECONTRUST COMPANY, NA, and all persons unknown claiming any right, title, estate, lien or interest in or to the real property described herein, or any part thereof, adverse to the Plaintiffs' title,<br><br>          Defendants. | CV-14-94-BLG-SPW-CSO<br><br>**ORDER**<br>**and**<br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

## I.   INTRODUCTION

This action arises out of a trustee's sale of real property.  In their

Amended Complaint, Plaintiffs John David Fischer, Jerald Duane

Fischer, and Angie Lee Fischer (the "Fischers"), assert the following

claims against Ocwen Loan Servicing, LLC ("Ocwen"), Federal Home

Loan Mortgage Corporation ("FHLMC"), and ReconTrust Company,

NA. :

Count I - Quiet Title
Count II - Montana Consumer Protection Act
Count III - Fraud
Count IV - Alternative Fraud I
Count V - Alternative Fraud II
Count VI – Constructive Fraud
Count VII - Deceit
Count VIII - Negligence/Negligent Misrepresentation
Count IX - Implied Covenant of Good Faith and Fair Dealing
Count X - Punitive Damages

*See ECF 19.*[1]  These claims are all based on state law.  The Amended

Complaint is not entirely clear as to which claims are asserted against

which Defendants.

Now pending are Ocwen and FHLMC's (referred to herein as

"Defendants") Motion for Judicial Notice *(ECF 4)* and Motion to

Dismiss *(ECF 2)*.

## II.  <u>BACKGROUND</u>

According to documents submitted by Defendants,[2] Plaintiff

Jerald Fischer borrowed $220,000 from AEGIS and, in connection with

that loan, executed a Deed of Trust on property on Rosebud Drive in

Billings, Montana.  *ECF 10-1*.  John Fischer and Angie Fischer later

---

[1] "ECF" refers to the document as numbered in the Court's Electronic Case Files.  *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

[2] Consideration of these documents is discussed *infra* at pages 8-10.

acquired interest in the property by way of quitclaim deeds. *ECF 10-2, 10-3*. Defendants contend that the Jerald Fischer defaulted on the loan in January 2012, and that foreclosure proceedings were commenced.

The following facts are alleged in Plaintiffs' Amended Complaint and, for purposes of considering the pending motion to dismiss, are assumed to be true.

In December 2011 or January 2012, Plaintiffs "began the application process for a mortgage payment modification through the Federal Government's Home Affordable Modification Program (hereinafter 'HAMP') through Bank of America." *ECF 19* at ¶ 5. As part of that process, Bank of America informed Plaintiffs that foreclosure processes may be initiated, but that Plaintiffs' home "would not be foreclosed on." *Id.* at ¶ 6. In April 2012, Plaintiffs were notified of a pending trustee's sale scheduled for August 22, 2012, but Bank of America again assured Plaintiffs "that this notification was part of the HAMP modification process and . . . that their home would not be foreclosed on." *Id.* at ¶¶ 7–8.

In June 2012, Bank of America sold Plaintiffs' Deed of Trust to Ocwen and, as a result, Plaintiffs were asked to re-complete the HAMP modification packet through Ocwen. *Id.* at ¶¶ 9, 10. Plaintiffs completed the modification packet as requested by Ocwen. *Id. at ¶ 11*.

Unbeknownst to Plaintiffs, Ocwen proceeded with the trustee's sale on August 22, 2012. Thereafter, by letter dated September 4, 2012, Ocwen thanked Plaintiffs for submitting their application for assistance and stated that they were "processing [Plaintiffs'] request as quickly as possible." *ECF 19-1 at 1*. In the letter, Ocwen also stated: "While we consider your request, we will not initiate a new foreclosure action and we will not move ahead with the foreclosure sale on an active foreclosure as long as we have received all required documents and you have met the eligibility requirements." *Id.* at 2. The letter also stated: "**[N]o foreclosure sale will be conducted and you will not lose your home during** the HAMP evaluation." *Id.* (emphasis in original).

Ocwen recorded the Trustee's Deed transferring the subject property to FHLMC on January 8, 2013. *Id.* at ¶¶ 15–16.

## III. PARTIES' ARGUMENTS

FHLMC argues there are no facts alleged as to FHLMC under Counts II–X, and it should be dismissed from each Count. *ECF 3* at 16–17, 21, 24, 26, 28, and 29.

Ocwen presents nine arguments for dismissal of the Amended Complaint for failure to state a claim under Rule 12(b)(6). First, Defendants argue that the Fischers cannot bring a quiet title action because they are not the legal owners and the Fischers' "interest in the property was conveyed to FHLMC by the Trustee's Deed." *Id.* at 14. They further argue that quiet title would be inappropriate because the Fischers "do not allege that the debt has been satisfied, that they have offered to pay the debt or that the debt is unenforceable." *Id.* at 15.

Second, Ocwen argues that the Fischers fail to state a claim under the Montana Consumer Protection Act ("MCPA") because the MCPA does "not include enforcing a security interest against a debtor, especially when the debtor received statutorily required notices and does not contest his default." *Id.* at 18.

Third, Ocwen argues that the fraud claims do not meet the

heightened pleading standard required by Rule 9(b). It further argues

that the Complaint fails to meet "the basic element of a

misrepresentation[,]" *id.* at 23, because Ocwen did not conceal any

material facts and the Fischers "do not state what was concealed and

how the alleged fact that was concealed was material." *Id.* at 24.

Fourth, Ocwen argues the Fischers' claim for constructive fraud

fails because Ocwen did not have a duty to the Fischers, nor did it

breach a duty "with an intent to create an advantage against

Plaintiffs." *Id.* at 25. Ocwen further argues that the letter sent on

September 4, 2012, was automatically generated and was not sent to

"fraudulently induce Plaintiffs to act or to create an advantage over

Plaintiffs." *Id.*

Fifth, Ocwen argues the deceit claim should be dismissed because

the Fischers do not allege they had ever been approved for a loan

modification or that the trustee's sale had been canceled. *Id.* at 26.

Ocwen also argues that there are no facts suggesting the Fischers

changed their position based on the September 4, 2012 letter. *Id.*

Sixth, Ocwen argues there is no "duty to modify or negotiate a

defaulted loan." *Id.* at 27.  It argues that absent some duty, the Fischers fail to state a claim for negligence.  Ocwen further argues that nothing alleged in the Complaint suggests Ocwen "went beyond the ordinary role of the lender."  *Id.*

Seventh, Ocwen argues the Fischers did not properly allege negligent misrepresentation because the Fischers were aware of the trustee's sale on August 22, 2012, and knew that it "would proceed if all of the documents were not received and if they did not qualify for the loan modification." *Id.* at 28.

Eighth, Ocwen argues the Fischers fail to allege a contract on which to support a claim for breach of the covenant of good faith and fair dealing.  *Id.* at 29.

Ninth, Defendants argue that punitive damages are a component of recovery, not a cause of action. *Id.* at 30.  They further argue that because an award for punitive damages was included as a separate claim rather than in the prayer for relief, it should be dismissed. *Id.*

The Fischers contend that because Ocwen already brought a Rule 12(b)(6) motion that had been ruled on in state court, it may not bring

it a second time. *ECF 20* at 3–6. Furthermore, they argue that the motion for judicial notice is an improper attempt to litigate a summary judgment motion and that Ocwen "cherry-picked only a few of the relevant documents involved and did not present to the Court the full array of documentary evidence involved in this case." *Id.* at 8.

Finally, the Fischers argue that they have adequately pled each claim and that the Court should take judicial notice of a Complaint and Consent Judgment ("Consent Judgment") involving Ocwen, executed in February 2014. *Id.* at 10–11. Because this request for judicial notice was not properly filed as a motion, it will not be considered. *See Fed. R. Civ. P. 7(b)(1)* ("A request for a court order must be made by motion....").

## IV. ANALYSIS

### A. Motion for Judicial Notice

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion without converting the motion into one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). There

is an exception to this rule, however, where a court takes judicial notice of matters of public record. *Id.* at 688-89. Taking judicial notice does not convert a motion to dismiss into one for summary judgment. *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.,* 547 F.3d 943, 955 (9th Cir. 2008). For example, in *Snyder v. HSBC Bank, USA, N.A.,* 913 F.Supp.2d 755 (D. Ariz. 2012), the district court took judicial notice of a publicly-filed Trustee's Deed Upon Sale in ruling on a 12(b)(6) motion to dismiss.

Here, Defendants present with their motion the Declaration of Jenny M. Jourdonnais, who declares under penalty of perjury that nine documents, which are attached to her Declaration, have all been filed in the official records of the Yellowstone County Clerk and Recorder. *ECF 10 and 10-1 through 10-9.* Plaintiffs do not dispute the authenticity of these documents and do not dispute that they have been filed in the official records of Yellowstone County. Indeed, Plaintiffs acknowledge that these are "a few of the relevant documents involved...." *ECF 20 at 8.*[3] Each of the documents pertains to the course of transactions

---

[3]Plaintiffs' brief accuses defense counsel of "sharp practice" and "deceptive practices." *ECF 20 at 7, 8.* Unless well substantiated by facts not

described in the Amended Complaint.

Accordingly, for the purpose of considering the pending motion to dismiss, the Court will grant the motion for judicial notice of the documents attached by Defendants to their motion for judicial notice. *ECF 10.*

## B.   Motion to Dismiss

### 1.   Proceedings in State Court

When a case is removed from state court, it is taken "up where the state court left it off." *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Loc. No. 70 of Alameda County*, 415 U.S. 423, 435–436 (1974). Any orders entered in state court continue to have force and effect after removal "until dissolved or modified by the district court." 28 U.S.C. § 1450. And, after removal, federal rather than state law governs the procedural course of the case. *See Richards*

---

now apparent to this Court, such *ad hominem* arguments are not helpful to the Court. *See generally Standards of Professional Courtesy Among Attorneys, Ten Commandments for Trial Lawyers, and Montana Values, 2014 Lawyers' Deskbook & Directory at 284, 286-87.* The Court will focus on the substantive merits of the claims and defenses of the parties. The parties are encouraged to do so as well.

*v. Harper*, 864 F.2d 84, 87 (9th Cir. 1988).

The only federal case the Fischers cite in support of their argument that Defendants are barred from filing the pending motion to dismiss, and that the state court order "must be followed in any subsequent proceedings" (*ECF 20 at 6*), is *Messenger v. Anderson,* 225 U.S. 436 (1912*)*.  But *Messenger* presented quite different facts.  It was not a removed case.  Instead, the central issue was the effect of a final ruling by the Ohio Supreme Court in a related, but separate, lawsuit. *Id. at 444.*  The central issue there was not "law of the case" in a removal situation but rather *res judicata.*  The United States Supreme Court noted that "law of the case" is not, as the Fischers here argue, a bar on re-examination of prior holding in the same case—it instead "expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power" to do so.  *Id.*

The state court here ruled on Ocwen's motion to dismiss an original complaint that presented only two claims and named only one defendant (Ocwen).  The current motion addresses a different pleading (the Amended Complaint (*ECF 19*)), states seven additional claims,

names two additional parties, and is now pending in a different court applying different procedural rules. Plaintiffs have not persuasively argued that this Court may not consider the arguments raised in the pending motion to dismiss.

## 2. <u>Standard of Review</u>

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*[4] A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 2014 WL 4290615, *10 (9th Cir. 2014). When a Rule 12(b)(6) motion is granted, leave to amend should be granted unless doing so would be futile. *See, e.g., Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000).

### 3. **FHLMC Motion to Dismiss**

FHLMC moves to dismiss all claims against it. In response, Plaintiffs clarify that the "only claim that affects [FHLMC] is the claim for quiet title"—Count I. *ECF 20 at 4.* Accordingly, it will be recommended that FHLMC's motion to dismiss Counts II through X be granted.

Turning to Count I, FHLMC's primary argument is that Plaintiffs' quiet title claim fails because Plaintiffs are not the legal owners of the

---

[4]Plaintiffs' brief cites the 1957 case of *Conley v. Gibson*, 355 U.S. 41 (1957) for the pleading standard under Rule 12(b)(6). *Conley* was substantially abrogated by the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (holding that *Conley* did not describe "the minimum standard of adequate pleading").

property nor do they have any interest therein.  Defendants cite Montana cases holding that a plaintiff must succeed on the strength of his own title and not the weakness of the defendant's title.  *See, e.g., Funk v. Robbin,* 689 P.2d 1215 (Mont. 1984).  The Court notes that in *Funk,* however, this ruling came after a trial on the merits, not on a Rule 12(b)(6) motion to dismiss.

Plaintiffs may assert a quiet title action against any person claiming "any right, title, estate, or interest" in the relevant property. *MCA § 70–28–101.*  As the state court previously noted, the Fischers allege that they were in the process of applying for a mortgage payment modification and had been assured that no foreclosure would occur pending its resolution.  *ECF 19 at ¶¶ 5, 6, 8, 12, 13, 14.*  For a trustee's sale of property to be valid, a trustee must give proper notice of the pending trustee's sale.  *MCA §§ 71–1–315(1)(a)(I)*; *Terry L. Bell Generations Trust v. Flathead Bank of Bigfork*, 302 P.3d 390, 394 (Mont. 2013).

The Fischers have said enough to state a quiet title claim against FHLMC.  FHLMC purchased the property at the trustee's sale and

claims an interest in the property. *ECF 19* at ¶ 16; *ECF 6-9* (Trustee's Deed). Therefore, it will be recommended that FHLMC's motion to dismiss Count I be denied.

### 4. Ocwen Motion to Dismiss

#### a. Count I—Quiet Title

Plaintiffs' Amended Complaint alleges that the "Defendants claim or may claim some right, title, or interest in or to the subject property." *ECF 19 at 2.* For the same reasons stated above with respect to FHLMC, Plaintiffs have said enough, at this stage of the proceedings, to state a quiet title claim against Ocwen.

#### b. Count II—Consumer Protection Act

For the same reasons articulated by the state court (*see ECF 15 at 7-8),* this Court concludes that Plaintiffs' Amended Complaint alleges sufficient facts to state a claim against Ocwen under the Montana Consumer Protection Act.

#### c. Counts III- VII—Fraud, Alternative Fraud I, Alternative Fraud II, Constructive Fraud, Deceit

In Montana, a fraud claim contains the following nine elements that plaintiffs must plead with particularity:

(1)    a representation;

(2)    the falsity of that representation;

(3)    the materiality of that representation;

(4)    the speaker's knowledge of the representations falsity or ignorance of its truth;

(5)    the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated;

(6)    the hearer's ignorance of the representation's falsity;

(7)    the hearer's reliance upon the truth of the representation;

(8)    the hearer's right to rely upon the representation; and

(9)    the hearer's consequent and proximate injury or damages caused by their reliance on the representation.

*In re Estate of Kindsfather*, 108 P.3d 487, 490 (¶ 17) (Mont. 2005).

"While a claim of constructive fraud requires similar proof, a plaintiff 'need not prove the fifth element relating to intent to deceive or dishonesty of purpose.'" *Town of Geraldine v. Montana Mun. Ins. Authority*, 198 P.3d 796, 801 (Mont. 2008).

Under Montana law, constructive fraud is defined as:

(1) any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone

> claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or (2) any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.

MCA § 28–2–406.  A "legal duty is an essential element of a claim for constructive fraud." *Harris v. St. Vincent Healthcare*, 305 P.3d 852, 858 (Mont. 2013) (citing *Mattingly v. First Bank of Lincoln*, 947 P.2d 66, 71 (Mont. 1997)).  A duty "may exist where one party has acted to mislead the other in some way." *Mattingly*, 947 P.2d at 72.  Additionally, a lender owes "a duty to a borrower not to make material misrepresentations about the status of an application for a loan modification." *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1184 (Mont. 2014) (citing *Lueras v. BAC Home Loans Servicing, LP*, 163 Cal. Rptr. 3d 804 (Cal. App. 4th Dist. 2013)).

Deceit under Montana law states that, "[o]ne who willfully deceives another with intent to induce that person to alter the person's position to the person's injury or risk is liable for any damage that the person suffers." MCA § 27–1–712.  Deceit includes:

(a) the suggestion as a fact of that which is not true by one who does not believe it to be true;
(b) the assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;
(c) the suppression of a fact by one who is bound to disclose it or who gives information of other facts that are likely to mislead for want of communication of that fact; or
(d) a promise made without any intention of performing it.

MCA § 27–1–712(2).

Fraud and deceit must be pled with particularity under Fed. R. Civ. P. 9(b), which provides that "a party must state with particularity the circumstances constituting fraud[.]" Although not announcing the rule in a published decision, the Ninth Circuit Court of Appeals has enforced the "particularity" requirement of federal Rule 9(b), applying it both to state-law fraud claims, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-03 (9th Cir. 2003), and constructive fraud claims. *Guerrero v. Greenpoint Mortgage Funding, Inc.*, 2010 WL 4117102 * 1 (9th Cir. 2010) (unpublished); *Azadpour v. Sun Microsystems, Inc.*, 2008 WL 2705645 (9th Cir. 2008) (affirming dismissal of constructive fraud claim under Rules 9(b) and 12(b)(6)) (unpublished). *See also Morse v. Espeland*, 696 P.2d 428, 430 (Mont. 1985).

The degree of particularity required to properly state a claim for constructive fraud depends upon the amount of access a plaintiff has to specific facts. *See, e.g., Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) (requirements can be relaxed where evidence is exclusively within defendant's possession). But the allegations "must be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Thus, plaintiffs must supply a higher degree of notice by pleading the "who, what, where, when, and how" of the alleged wrongdoing. *See Ebeid*, 616 F.3d at 998 (*citing Vess*, 317 F.3d at 1106); *Kearns*, 567 F.3d at 1124.

Rule 9(b) serves to provide defendants with adequate notice to allow them to defend the charge. *Kearns*, 567 F.3d at 1125 (internal quotations omitted). But despite the higher degree of notice it requires, Rule 9 does not abrogate the Rule 8 notice pleading standard—the two rules must be read together. *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185-86 (5th Cir. 2009). And under Rule 12(b)(6), a defendant

retains the burden of proving that plaintiff has failed to state a claim. *Anderson v. Fishback*, 2009 WL 2423327, * 2 (E.D. Cal. 2009).

Under these standards, the Court concludes that the Fischers do not plead their fraud and deceit claims with sufficient particularity. Several of their allegations lack the required specificity. They do not allege that, prior to the trustee's sale, Ocwen represented that it would not proceed with the foreclosure. They do allege that Bank of America made such representations (*ECF 19 at 2*), but Bank of America is not a defendant, and Plaintiffs do not allege that Ocwen can be held responsible for Bank of America's representations.

They allege that they "were asked to recomplete the HAMP modification packet through Defendant Ocwen" *(ECF 19 at ¶ 10),* but they do not allege the required "who, when, where and how" of such request, and do not allege that Ocwen then informed them that their home would not be foreclosed on. They allege that, subsequent to completing the Trustee's sale, Ocwen "continued to represent to Plaintiffs that their property would not be foreclosed on." *Id. at ¶ 14.*

But they again they do not allege the required "who, when, where, and how" of such representations.

The only Ocwen representation that the Fischers allege with specificity is the letter dated September 4, 2012. *ECF 19 at ¶ 12.* At least some of the statements in the letter were apparently false, and the Fischers allege that they were unaware of the truth that the foreclosure sale had occurred. But this letter was received after the foreclosure sale. The Fischers allege only in a conclusory fashion that they relied on the letter to their detriment. Under Montana law, simply reciting the bare elements of a fraud claim is not sufficient. *See Fossen v. Fossen*, 311 P.3d 743 (Mont. 2013). For the same reasons, the Court concludes that the Fischers have failed to state a claim for deceit.

These deficiencies may be curable by amendment and Plaintiffs should be given the opportunity to amend. Therefore it will be recommended that the motion to dismiss Counts III - VII be granted, with leave to amend.

### d.    Count VIII—Negligent Misrepresentation and Negligence

Count VIII contains combined allegations of negligence and negligent misrepresentation. Because the elements of these causes of action differ, the Court will address them each in turn.

Considering first the claim for negligent misrepresentation, the Court is guided by the Montana Supreme Court's recent definition of this tort. In *Morrow,* the court held that a claim of negligent misrepresentation against a financial institution is governed by the Restatement (Second) of Torts § 552:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Morrow*, 324 P.3d at 1180.

The Fischers' claim of negligent misrepresentation is based on the same factual allegations as the claims of fraud. In this case, Ocwen was operating as a financial institution by servicing the Fischers' mortgage. As previously discussed, the Fischers allege they received false and contradicting communications from Ocwen. *ECF 19 at ¶¶*

8–14. Ocwen contends that no false information was conveyed to the Fischers because their letter accurately stated the trustee's sale "would proceed if all of the documents were not received and if they did not qualify for the loan modification." *ECF 3* at 28. But this statement was made in a letter intended to guide the Fischers through their mortgage modification process, yet was made after the trustee's sale had already occurred. *ECF 19* at ¶¶ 12–14. The Fischers allege that they were unaware the trustee's sale had occurred, and further allege that they relied on this statement. *Id.* at ¶ 13. Although, as noted above, the Fischers have not specifically alleged how Ocwen misrepresented their intentions prior to the sale, and have not specifically alleged how they relied on Ocwen's representations to their detriment, they have said enough to state a claim for negligent misrepresentation. Ocwen has not argued that this claim must be pled with particularity.

As to the negligence claim, the Plaintiffs must allege four elements: "(1) duty; (2) breach of duty; (3) causation; and (4) damages." *Hatch v. State Dept. of Highways*, 887 P.2d 729, 732 (Mont. 1994). "The existence of a legal duty is a question of law to be determined by the court." *Fisher v. Swift Transp. Co., Inc.*, 181 P.3d 601, 607 (Mont.

2008).  Generally, a bank has no duty to modify or renegotiate a

defaulted loan.  If the borrower has not been advised by the bank or has

not relied on that advice, no fiduciary relationship exists.  *Morrow*, 324

P.3d at 1177.  But a mortgage servicer "that actively engag[es] with a

borrower, particularly in the modification context, stands in a different

relation to the borrower than does a traditional 'silent lender.'" *Id. at

1178.*  Thus such special circumstances, if proven, could support a

fiduciary duty where a defendant went beyond its conventional role as

a loan servicer by, for example, soliciting a plaintiff to apply for a loan

modification and by engaging with them for several months or longer.

If a mortgage servicer is actively engaged with a borrower, particularly

in the modification context, it may give rise to a fiduciary duty.  *Id.* at

1178.

In *Morrow*, the Montana Supreme Court found that to determine

whether this special relationship exists, a court may be required to

make a fact-intensive inquiry.  *Id. at 1178, n.1.*  The Court cannot make

such an inquiry in connection with a motion to dismiss.  Thus, the

Court finds that the Amended Complaint says enough to state a claim

for negligence.  The Amended Complaint alleges that Ocwen engaged

with the Fischers by asking them to "re-complete the HAMP modification packet." *ECF 19* at ¶¶ 9–10. It further alleges that Ocwen represented that the property foreclosure would not proceed during the HAMP evaluation process. The communications between these parties may, or may not, give rise to a fiduciary duty for Ocwen in managing the loan modification process. The Court cannot make this determination based on the Amended Complaint. It does, however, satisfy Rule 8(a)(2)'s requirement of a short and plain statement showing that Plaintiffs are entitled to relief. Accordingly, the Fischers have stated a claim for negligence and the Court will recommend denial of the motion to dismiss this claim.

### e. Count IX—Implied Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing requires "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *MCA 28-1-211*. While every contract involves an implied covenant of good faith and fair dealing, an existing contract "is a prerequisite to a claim for tortious breach of the

covenant." *Morrow*, 324 P.3d at 1176 (citing *Knucklehead Land Co. v. Accutitle, Inc.*, 172 P.3d 116, 121 (Mont. 2007)).

Ocwen contends that this claim fails because (1) the Amended Complaint fails to allege any contract between the Fischers and Ocwen, and (2) even if there were a contract, there is no discretionary provision which is allegedly the basis for the implied covenant claim. *ECF 3 at 29-30.* The Fischers' short response does not directly answer either contention. *ECF 20 at 17.* It does not refer to any specific contract, but only states that "Ocwen was to have been providing loan servicing to the Fischers." *Id.* As the Montana Supreme Court found in *Morrow,* the borrowers' claim is not based on the original loan contracts, but on subsequent unexecuted oral communications they contend to be contractual. This cannot support a claim for breach of an implied contractual covenant. *Morrow, 324 P.3d 1176-77 (citing MCA 28-2-1602).* Accordingly, the Court will recommend that the motion to dismiss this claim be granted.

### f.    <u>Count X—Punitive Damages</u>

Under Montana law, "a judge or jury may award, in addition to compensatory damages, punitive damages for the sake of example and

for the purpose of punishing a defendant." MCA § 27–1–220. Punitive damages are merely a component of recovery in some types of civil actions. *See Finstad v. W.R. Grace & Co.*, 8 P.3d 778, 782 (Mont. 2000).

In this case, the claim for punitive damages is contained in both a separate cause of action under Count X, as well as in the prayer for relief. *ECF 19* at ¶ 50 and page 9. Several of the underlying claims could support an award of punitive damages. It certainly would not be inappropriate for Plaintiffs to include the claim for punitive damages only in their prayer for relief, as Ocwen argues they should have done. But neither is it inappropriate, or in any way confusing, for Plaintiffs to include their claim for punitive damages in a separate count. The motion to dismiss Count X should be denied.

## V. <u>CONCLUSION</u>

## <u>ORDER</u>

IT IS ORDERED that Defendants' Motion for Judicial Notice (*ECF 4*) is GRANTED.

## <u>RECOMMENDATIONS</u>

IT IS RECOMMENDED that Defendant FHLMC's Motion to Dismiss (*ECF 2*) be GRANTED to the extent it seeks dismissal of

Counts II through X, but DENIED to the extent that it seeks dismissal of Count I.

IT IS FURTHER RECOMMENDED that Defendant Ocwen's Motion to Dismiss (*ECF 2)* Counts III through VII and Count IX be GRANTED, with leave to amend by Plaintiffs, but DENIED as to Counts I, II, VIII and X.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 25th day of November, 2014.

/s/ Carolyn S. Ostby
United States Magistrate Judge