IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JOHN DAVID FISCHER, JERALD DUANE FISCHER, and ANGIE LEE FISCHER, <br><br> Plaintiffs, <br><br> vs. <br><br> OCWEN LOAN SERVICING, LLC, FEDERAL HOME LOAN MORTGAGE CORPORATION, BANK OF AMERICA, N.A., BAC HOME LOANS SERVICING, LP, RECONTRUST COMPANY, NA, JOHN DOES 1, 2, & 3, and all persons unknown claiming any right, title, estate, lien or interest in or to the real property described herein, or any part thereof, adverse to the Plaintiffs' title, <br><br> Defendants. | CV-14-94-BLG-SPW-CSO <br><br> **ORDER** <br> **and** <br> **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

## I.   INTRODUCTION

This action arises out of a trustee's sale of real property and

involves, among other things, adjudication of title to the property in

Billings, Montana.  In prior proceedings, the Court granted in part and

denied in part motions to dismiss brought by Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Federal Home Loan Mortgage Corporation ("FHLMC"). *See Order (ECF 23) (adopting Findings and Recommendations (ECF 22)).* With the Court's leave, Plaintiffs John David Fischer, Jerald Duane Fischer, and Angie Lee Fischer (the "Fischers") then filed a Second Amended Complaint *(ECF 31)*[1] adding two defendants – Bank of America, N.A. ("BOA") and BAC Home Loans Servicing, LP ("BAC"). The Fischers now assert the following claims, all of which derive from state law:

| Count I: | Quiet Title against all Defendants |
| --- | --- |
| Count II: | Montana Consumer Protection Act violations by BOA, BAC, Ocwen, and ReconTrust Company, NA ("ReconTrust") |
| Count III: | Fraud against BOA, BAC, and Ocwen |
| Count IV: | Alternative Fraud I against BOA, BAC, and Ocwen |
| Count V: | Alternative Fraud II against BOA, BAC, and Ocwen |
| Count VI: | Constructive Fraud against BOA, BAC, and |

---

[1] "ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

| | Ocwen |
|---|---|
| Count VII: | Deceit against BOA, BAC, and Ocwen |
| Count VIII: | Negligence/Negligent Misrepresentation against BOA, BAC, and Ocwen |
| Count IX: | Implied Covenant of Good Faith and Fair Dealing against BOA, BAC, and Ocwen |
| Count X: | Punitive damages against BOA, BAC, and Ocwen |

*ECF 31.*

Now pending are BOA, BAC, and ReconTrust's Motion for Judicial Notice *(ECF 47)* and Motion to Dismiss *(ECF 49)*.

## II.   **BACKGROUND**

For purposes of considering the pending motion to dismiss, the Court assumes that the following allegations in the Fischers' Second Amended Complaint are true.

On or about September 19, 2006, Jerald Fischer obtained a mortgage to the property at issue in this action (hereafter "the subject property")[2] secured by a Deed of Trust. *ECF 31 at ¶ 10.*

---

[2]The subject property is described as:

Lot 1 in Bock 14 of Lampman Subdivision, in the City of Billings, Yellowstone County, Montana, according to the official plat on file in

On or about December 8, 2006, Jerald Fischer quitclaimed his interest in the subject property to John David Fischer and himself. *Id. at ¶ 11.*

On or about October 5, 2010, Jerald Fischer and John Fischer executed a quit claim deed transferring the property to themselves and to Angie L. Fischer. *Id. at ¶ 12.*

On April 7, 2011, the Deed of Trust at issue was assigned to BAC and was recorded on or about April 13, 2011. *Id. at ¶ 13.* On April 13, 2011, ReconTrust was substituted as successor trustee for the Deed of Trust. *Id. at ¶ 14.*

Sometime in 2011, the Fischers requested a mortgage modification. BAC suggested modifying the mortgage through the federal government's Home Affordable Modification Program ("HAMP") through BAC. Representatives of BAC informed the Fischers that the only way that a mortgage modification could be accomplished through this program was if the Fischers did not make mortgage payments for

---

the office of the Clerk and Recorder of said County, under Document #557995.

*ECF 31 at ¶ 1.*

two months.  BAC encouraged the Fischers to default on the mortgage

obligation to qualify for the HAMP modification.  *Id. at ¶ 15.*

In December 2011 and January 2012, the Fischers began the

application process for a mortgage payment modification through the

HAMP through BAC.  *Id. at ¶ 16.*

As a part of the HAMP application process, BAC informed the

Fischers that foreclosure processes may be initiated, but that the

Fischers' home would not be foreclosed upon or sold.  *Id. at ¶ 17.*

The Fischers timely prepared and delivered a completed

application for loan modification through the HAMP to BAC and/or

BOA.  *Id. at ¶ 18.*

On or about March 29, 2012, the Deed of Trust was assigned to

BOA, as successor by merger to BAC.  *Id. at ¶ 19.*

In April 2012, the Fischers were notified, via mailing, of a

pending Trustee's sale scheduled for August 22, 2012.  *Id. at ¶ 20.*

BOA again assured the Fischers that this notification was part of

the HAMP modification process and assured the Fischers that their

home would not be foreclosed upon or sold.  *Id. at ¶ 21.*

On or about June 26, 2012, Ocwen notified the Fischers that it had assumed the mortgage servicing from BAC. *Id. at ¶ 22.*

On or about August 9, 2012, BOA executed a Corporation Assignment of Deed of Trust assigning to Ocwen all interest under the Deed of Trust. *Id. at ¶ 23.* Because the Fischers' mortgage was transferred, Ocwen requested that the Fischers again complete the HAMP modification application. The Fischers timely completed the modification application as requested and delivered it to Ocwen. *Id. at ¶¶ 24-25.*

At no time before August 22, 2012, did BAC or Ocwen represent to the Fischers that any trustee sale would proceed during the time that the Fischers submitted the second HAMP application to Ocwen. *Id. at ¶ 26.* Unbeknownst to the Fischers, on August 22, 2012, a trustee's sale allegedly occurred at which FHLMC was allegedly the high bidder. *Id. at ¶ 27.*

On September 4, 2012, after receiving the HAMP application, Ocwen represented to the Fischers that "[w]hile we consider your request, we will not initiate a new foreclosure action and we will not

move ahead with the foreclosure sale on an active foreclosure as long as we have received all required documents and you have met the eligibility requirements." *Id. at ¶ 28.*

On September 19, 2012, the Fischers received a letter from Ocwen stating that their modification had been denied because their house had previously been foreclosed upon. *Id. at ¶ 29.*

On September 25, 2012, Ocwen wrote to the Fischers' counsel stating that the subject property had been foreclosed on August 23, not August 22, and that the subject property was listed with Ocwen's Real Estate Owned department. *Id. at ¶ 30.*

On October 31, 2012, the Fischers filed a quiet title action in state court in which they also alleged a violation of the Montana Consumer Protection Act. *Id. at ¶ 31.*

On December 28, 2012, Ocwen executed an Assignment of Deed of Trust, assigning all of its right, title, and interest in the subject property to FHLMC. *Id. at ¶ 32.*

On January 2, 2013, ReconTrust executed the Trustee's Deed which states that on August 22, 2012, ReconTrust (as trustee) sold the

subject property to FHLMC as the highest bidder.  *Id. at ¶ 33.*

On January 8, 2013, Ocwen recorded both the Assignment of Deed of Trust and the Trustee's Deed with the Yellowstone County Clerk and Recorder's Office.  *Id. at ¶ 34.*  The Trustee's Deed was recorded after this action was filed.  It purports to transfer title of the subject property from ReconTrust to FHLMC.  *Id. at ¶ 35.*

On January 22, 2013, the Fischers received a letter from Ocwen thanking them for their submission of the modification packet and assuring them that Ocwen will not foreclose upon the subject property. *Id. at ¶ 36.*

## III.  DISCUSSION

### A.    Motion for Judicial Notice

BOA, BAC, and ReconTrust, relying on Rule 201, Fed. R. Evid., move the Court to take judicial notice of two documents: (1) the Deed of Trust recorded in the Yellowstone County Clerk & Recorder's Office on September 21, 2006, at Document No. 3393875; and (2) the Corporate Assignment of Deed of Trust recorded in the Yellowstone County Clerk & Recorder's Office on August 20, 2012, at Document No. 3635151.

*Mtn. for Jud. Notice (ECF 47) at 2.*

As a general rule, a district court may not consider any material

beyond the pleadings in ruling on a Rule 12(b)(6)[3] motion without

converting the motion into one for summary judgment. *Lee v. City of*

*Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). An

exception exists, however, where a court takes judicial notice of matters

of public record. *Id.* at 688-89. Taking judicial notice does not convert

a motion to dismiss into one for summary judgment. *See United States*

*v. 14.02 Acres of Land More or Less in Fresno Cnty.,* 547 F.3d 943, 955

(9th Cir. 2008).

BOA, BAC, and ReconTrust present the Declaration of counsel

Mark D. Etchart, who declares under penalty of perjury that the two

documents, which are attached to his Declaration, have been filed in

the official records of the Yellowstone County Clerk and Recorder.

*Decl. of Mark D. Etchart (ECF 48); Deed of Trust (ECF 48-1) and*

*Corporation Assignment of Deed of Trust (ECF 48-2).*

The Fischers did not respond to the instant motion.

---

[3]References to rules are to the Federal Rules of Civil Procedure unless otherwise indicated.

Consequently, they have not disputed the authenticity of the documents nor have they disputed that the documents have been filed in Yellowstone County's official records. It appears that the documents pertain to the course of transactions described in the Second Amended Complaint. For all of these reasons, for the purpose of considering the pending motion to dismiss, the Court will grant the motion for judicial notice of the subject documents.

### B. Motion to Dismiss

#### 1. Legal Standard

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) (quoting Rule 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citation omitted). When a Rule 12(b)(6) motion is granted, leave to amend should be granted unless doing so would be futile. *See Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000).

### 2. <u>Analysis</u>

BOA, BAC, and ReconTrust move to dismiss all claims against them. *Defts' Br. (ECF 50) at 2.* The Fischers agree that Counts I through VII should be dismissed to the extent those Counts are asserted against BOA and BAC. *Fischers' Resp. Br. (ECF 53) at 3, 6-7, 9-10.* The Fischers further concede that all claims against ReconTrust should be dismissed and that ReconTrust should be dismissed from this

action.  *Id. at 5-6.*[4]  Thus, the Court will recommend that Counts I through VII be dismissed to the extent that they are asserted against BOA and BAC, and that all claims against ReconTrust be dismissed, without prejudice.

Based on the foregoing, the motion to dismiss remains directed only at Counts VIII, IX, and X to the extent that they are asserted against BOA and BAC.  The Court addresses the challenge to each remaining count seriatim.

### 1.    Negligence/Negligent Misrepresentation (Count VIII)

BOA and BAC argue that the Fischers' negligence/negligent misrepresentation claim is barred by the applicable three-year statute of limitations provided in MCA § 27-2-204(1).  *ECF 50 at 8-9.*  They maintain that the Fischers' allegation that BOA and BAC instructed them to stop making loan payments "[s]ometime in 2011[ ]" alleges conduct that occurred more than three years before the Fischers' filed

---

[4]In conceding that ReconTrust should be dismissed, the Fischers note that if they "discover any wrongdoing with regard to the trustee's sale and execution of documents, [they] will request leave to file an amended complaint." *ECF 53 at 6.*  The Court, therefore, will recommend that all claims against ReconTrust be dismissed, without prejudice.

their Second Amended Complaint, which pleading named BOA and BAC for the first time. Thus, they argue, the Fischers' negligence/negligent misrepresentation claim against them is not timely and must be dismissed. *Id.*

In response, the Fischers concede that their negligence/negligent misrepresentation claim has a three-year statute of limitations. *Fischers' Resp. Br. (ECF 53) at 3.* Thus, they agree that the limitations period extends only to any negligent misrepresentation that occurred from January 14, 2012, to the present. *Id.* The Fischers, however, also argue that several of their allegations related to this claim are alleged in their Second Amended Complaint to have occurred after January 14, 2012. *Id. at 4.* Thus, they argue, the claim is timely and the Court should deny the motion to dismiss. *Id.*

In reply, BOA and BAC note that the Fischers concede that any alleged conduct occurring before January 12, 2012, is outside of the applicable limitations period. *Reply Br. (ECF 57-1) at 4.* The claim at issue fails, they argue, because the Fischers cannot establish that BOA or BAC owed them a duty at any time within the applicable limitations

period.  *Id.*  Also, BOA and BAC argue that the Fischers' Second

Amended Complaint contains no allegation that either John Fischer or

Angie Fischer were BOA customers, so there is no basis for concluding

that BOA and BAC owed them any duty.  *Id. at 5.*  And, BOA and BAC

did not foreclose on their property – Ocwen did.  Thus, they argue, they

cannot be liable on this claim.  *Id. at 5-6.*

As this Court has previously stated in this case, in Montana, a

claim of negligent misrepresentation against a financial institution is

governed by the Restatement (Second) of Torts § 552:

> One who, in the course of his business, profession or
> employment, or in any other transaction in which he has a
> pecuniary interest, supplies false information for the
> guidance of others in their business transactions, is subject
> to liability for pecuniary loss caused to them by their
> justifiable reliance upon the information, if he fails to
> exercise reasonable care or competence in obtaining or
> communicating the information.

*Order and Findings and Recommendations (ECF 22) at 22 (quoting*

*Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1180 (¶ 46) (Mont.

2014)).

Here, the Fischers allege that they received inaccurate

information from BOA and BAC concerning the HAMP program and

whether foreclosure of their property would be initiated or actually occur. *ECF 31 at ¶¶ 15-21, 26*. Other than their allegations contained in paragraphs 15 and 16 of their Second Amended Complaint, they do not allege that any conduct by BOA and BAC related to this claim occurred before January 12, 2012. Thus, the Court cannot conclude on the current record that none of their allegations fall within the applicable limitations period, and the Court cannot recommend dismissal of this claim based on lack of timeliness.

Next, the Court declines to address BOA and BAC's argument that they could not have a duty to two of the plaintiffs because the two were not their customers. BOA and BAC did not raise this argument in their opening brief. Thus, the Fischers were precluded from responding to the argument. In any event, it is unclear from the record at this juncture in the proceedings whether BOA and BAC had a relationship with John Fischer or Angie Fischer that could give rise to a duty under *Morrow*. Thus, the Court cannot recommend dismissal of this claim on the basis asserted.

Respecting the Fischers' negligence claim, as noted previously

Montana law provides that they must allege four elements: "(1) duty; (2) breach of duty; (3) causation; and (4) damages." *ECF 22 at 22-23* (*quoting Hatch v. State Dept. of Highways*, 887 P.2d 729, 732 (Mont. 1994)). "The existence of a legal duty is a question of law to be determined by the court." *Id.* (*quoting Fisher v. Swift Transp. Co., Inc.*, 181 P.3d 601, 607 (Mont. 2008)). As this Court previously noted in this case:

> Generally, a bank has no duty to modify or renegotiate a defaulted loan. If the borrower has not been advised by the bank or has not relied on that advice, no fiduciary relationship exists. But a mortgage servicer that actively engag[es] with a borrower, particularly in the modification context, stands in a different relation to the borrower than does a traditional silent lender. Thus such special circumstances, if proven, could support a fiduciary duty where a defendant went beyond its conventional role as a loan servicer by, for example, soliciting a plaintiff to apply for a loan modification and by engaging with them for several months or longer. If a mortgage servicer is actively engaged with a borrower, particularly in the modification context, it may give rise to a fiduciary duty.
>
> [In determining whether a] special relationship exists, a court may be required to make a fact-intensive inquiry. The Court cannot make such an inquiry in connection with a motion to dismiss.

*Id.* at 24 (citations and internal quotation marks omitted).

In light of this standard, the Court cannot determine on the

present motion whether a special relationship exists. The Court

concludes, however, that the Fischers have supplied enough factual

allegations in their Complaint to state a claim for negligence. *ECF 31

at ¶¶ 15-21, 102-03.* Thus, while the Court cannot determine whether

BOA and BAC's actions give rise to a fiduciary duty, it concludes that

the Fischers' allegations satisfy Rule 8(a)(2)'s requirement of a short

and plain statement showing that the Fischers are entitled to relief.

*See ECF 22 at 24-25.* Thus, the Court will recommend that motion to

dismiss be denied to the extent it is directed at the Fischers'

negligence/negligent misrepresentation claim.

## 2. <u>Implied Covenant of Good Faith and Fair Dealing (Count IX)</u>

BOA and BAC argue that the Court already dismissed the

Fischers' claim for breach of the implied covenant of good faith and fair

dealing and maintains that the Court should again dismiss it for the

reasons already stated in the earlier decision. *ECF 50 at 15.* Also, they

argue the Fischers have failed "to identify any discretionary provision

in the Deed of Trust upon which the implied covenant claim can be

based." *Id.* Thus, they argue, the Court should dismiss the claim. *Id.*

*at 15-16.*

The Fischers respond that the Court granted them leave to amend this claim, which they did. *ECF 53 at 7.* They argue that they have properly stated a claim because they have alleged that BOA and BAC breached a duty to them to deal honestly with them when BOA and BAC encouraged them to default on their loan so as to be allowed to refinance under the HAMP program. *Id.* The Fischers also argue that BOA and BAC "repeatedly advised [them] that their property would not be sold while the application process was proceeding . . . [and] [t]hese representations turned out to be false and [their] property was allegedly sold." *Id. at 7-8.*

Because of the foregoing allegations, the Fischers argue, whether there was a discretionary provision in the Deed of Trust is not relevant. BOA and BAC "purported to have specialized knowledge," the Fischers argue, and had a contractual relationship with them. The Fischers trusted the advice given and representations made, they argue, and "it is not commercially reasonable for a mortgage servicer to provide false information and to advise home owners to take a course of action that

would lead to the loss of their property." *Id. at 8*. Thus, they argue, the Court should deny the motion to dismiss respecting this claim. *Id.*

BOA and BAC reply that the Fischers have failed to "offer any legally supported argument that would prevent the dismissal of" this claim. *ECF 57-1 at 6*. Rather, they argue, the Fischers "conclude (without any support) that they can state a claim for breach of the implied covenant of good faith and fair dealing by simply making vague references to alleged oral communications by [BOA and BAC] while servicing the mortgage loan." *Id.* But, they argue, the Court already has determined that such allegations are insufficient to state a claim. *Id. at 6-7*.

As the Court already has noted in this action, "[t]he implied covenant of good faith and fair dealing requires 'honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.'" *ECF 22 at 25 (quoting MCA 28-1-211)*. "While every contract involves an implied covenant of good faith and fair dealing, an existing contract 'is a prerequisite to a claim for tortious breach of the covenant.'" *Id. at 25-26 (quoting Morrow*, 324 P.3d at 1176 (citing

19

*Knucklehead Land Co. v. Accutitle, Inc.*, 172 P.3d 116, 121 (Mont. 2007))).

Here, the Fischers allege that BOA and BAC, as mortgage servicers and assignees to the original mortgage documents (including the Deed of Trust), had a contractual relationship with them. *ECF 31 at ¶ 106.* The Fischers further allege, as noted, that BOA and BAC failed to deal honestly with them and failed to observe reasonable commercial standards of fair dealing in the trade when they provided false and inaccurate information concerning the HAMP program and whether foreclosure of their property would be initiated or actually occur. *ECF 31 at ¶¶ 15-21, 26.* Although the Fischers did not plead their allegations with precision and specificity, the Court, construing the Second Amended Complaint liberally, concludes that they have alleged facts from which an inference may be reasonably drawn that the claim is based, at least in part, on the underlying mortgage agreement. *See Roybal v. Bank of America, N.A.*, 2015 WL 1534118, *8 (D. Mont., April 6, 2015). Thus, the Court will recommend that the motion to dismiss be denied to the extent that it is directed at this

claim.

### 3.    Punitive Damages (Count X)

As noted previously in this case, Montana law provides that "a judge or jury may award, in addition to compensatory damages, punitive damages for the sake of example and for the purpose of punishing a defendant." *ECF 22 at 26-27* (*quoting* MCA § 27–1–220). "Punitive damages are merely a component of recovery in some types of civil actions." *Id. at 27* (citing *Finstad v. W.R. Grace & Co.*, 8 P.3d 778, 782 (Mont. 2000)).

Here, the punitive damages claim is found both in a separate cause of action under Count X and in the Fischers' prayer for relief. *ECF 31 at ¶¶ 113-15; Prayer at ¶8.* The claims that the Court herein recommends not be dismissed could support an award of punitive damages. Thus, the Court will recommend that the motion to dismiss be denied to the extent that it is directed at this claim.

## IV.    CONCLUSION

## ORDER

IT IS ORDERED that the Motion for Judicial Notice (*ECF 47*) is GRANTED.

## RECOMMENDATIONS

IT IS RECOMMENDED that the motion to dismiss (*ECF 49*) be GRANTED to the extent it seeks dismissal of Counts I through VII against BOA, BAC, and ReconTrust, but DENIED to the extent it seeks dismissal of Counts VIII, IX, and X against BOA and BAC.

IT IS FURTHER RECOMMENDED and that all claims asserted against Defendant ReconTrust be DISMISSED, without prejudice, and that ReconTrust be DISMISSED from this action, without prejudice.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 16th day of June, 2015.


/s/ Carolyn S. Ostby
United States Magistrate Judge